UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| LATINA SOMMERS, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:24-CV-810-SDJ |
| | § | |
| TYSON FRESH MEATS, INC. | § | |

**MEMORANDUM OPINION AND ORDER**

In this employment discrimination case Plaintiff Ieshia Orr contends that Defendant Tyson Fresh Meats, Inc., discriminated and retaliated against her through denials of promotion, disparate treatment, and ultimately termination. Orr further contends that, because of Tyson's actions, she has suffered humiliation, mental anguish and stress, depression, headaches, lethargy, and anxiety. Orr seeks substantial damages for her alleged non-economic injuries.

There is no dispute between the parties that Orr's claims place her mental health and emotional distress at issue. There is a dispute, however, about the discovery of records from Orr's mental health provider. Responding to Tyson's discovery requests, Orr redacted information in her health records related to "childhood trauma" and "parental medical history." Tyson maintains that Orr's redactions concerning her "childhood trauma" are improper and that the concealed information is discoverable. Following an unsuccessful attempt to resolve the dispute through an informal conference with the Court, Orr filed her Motion for Protective Order, (Dkt. #57), and Tyson filed its Response to Orr's Motion for Protective Order and Motion to Compel, (Dkt. #58). The motions have been fully briefed. (Dkt. #61,

#64, #84, #84-1, #84-2, #84-3, #84-4). The Court has also reviewed in camera the unredacted medical records in question. (Dkt. #78-1).[1]

Because Orr's redactions from her medical records conceal information that is discoverable under Federal Rule of Civil Procedure 26 and any applicable privilege has been waived, her Motion for Protective Order is denied and Tyson's Motion to Compel is granted.

## I. Background

Orr, an African American woman, worked for Tyson for over twelve years at multiple Tyson facilities in several States. According to Orr, throughout her tenure at the company, Tyson "racially discriminated against her and repeatedly denied promoting her in favor of less-qualified non-Black employees." (Dkt #57 at 2). Orr further claims that, ultimately, Tyson terminated her "for the pretextual reason of 'insubordination.'" (Dkt #57 at 2). In her operative complaint, Orr asserts that Tyson's terms and conditions of employment, disparate discipline, hostile work environment, and Orr's termination from employment all violated her rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991. (Dkt. #31 ¶ 1); (Dkt. 57 at 2). Orr seeks recovery of non-economic damages that she claims arise from "humiliation, mental anguish and stress, depression, headaches, lethargy, and anxiety," caused by Tyson's conduct. (Dkt. #31 ¶ 644).

Tyson has made discovery requests concerning Orr's claimed non-economic damages, including requests for relevant mental health records. In response, Orr

[1] While the Court has performed an in camera review of the unredacted medical records, (Dkt. #78-1), the redacted, sealed versions are cited in this order. (Dkt. #63).

produced 109 pages of medical records from her doctors spanning from early 2023 through late 2025 (the "Medical Records"). (Dkt. #63 (Sealed)); (Dkt. #57). Orr redacted information in the Medical Records related to "childhood trauma and parental medical history" and provided a corresponding privilege log. (Dkt. #57). The privilege log asserts only a privacy objection and states for each redaction: "Therapy session notes. Redacted portions address personal matters concerning non-party individuals and events unrelated to Claimant's claims against Tyson." (Dkt. #84-4).

According to Orr, her redactions "fall into two categories: (1) information from an intake survey in which Ms. Orr identified past traumas, and (2) references to childhood trauma within therapy notes." (Dkt. #57 at 3). Outside of the childhood trauma, select family history, and her social security number, Orr did not redact "other unrelated personal struggles discussed in the therapy notes." (Dkt. #57). Tyson has objected to the redactions which deal with childhood trauma and has not objected to redactions of Orr's parental medical history and her social security number. (Dkt. #58 at 3 n.2).

The Court has reviewed in camera the Medical Records, which concern the following medical appointments.

- March 29, 2023, Therapist appointment. (Dkt. #63 at 100–110 (sealed)).
- April 8, 2023, Therapist appointment. (Dkt. #63 at 91–99 (sealed)).
- June 12, 2023, Doctor's visit, not therapy. (Dkt. #63 at 79–90 (sealed)).
- October 7, 2023, Doctor's visit, not therapy. (Dkt. #63 at 70–79 (sealed)).
- December 12, 2023, Doctor's visit, not therapy. (Dkt. #63 at 62–70 (sealed)).
- September 23, 2025, Doctor's visit, not therapy. (Dkt. #63 at 26–61 (sealed)).
- September 29, 2025, Doctor's visit, not therapy. (Dkt. #63 at 22–25 (sealed)).

- November 10, 2025, Doctor's visit, not therapy. (Dkt. #63 at 19–21 (sealed)).
- November 11, 2025, Therapist appointment. (Dkt. #63 at 12–18 (sealed)).
- November 19, 2025, Therapist appointment. (Dkt. #63 at 9–11 (sealed)).

The record for each appointment includes redactions, with the bulk of the redactions reflected in the records for Orr's four therapy appointments.

## II. LEGAL STANDARD

District courts have broad discretion over the scope of discovery. *See, e.g.*, *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 645 (5th Cir. 2005). Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b). Relevance is construed broadly: The requested information need only relate to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); *see also Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022) (similar). In addition to being relevant, such information must also be proportional to the needs of the case. *Zenith Ins. v. Tex. Inst. for Surgery, L.L.P*, 328 F.R.D. 153, 161 (N.D. Tex. 2018) (quotations omitted).

Although the scope of allowable discovery is broad, it is not unlimited. Courts may issue protective orders, quash subpoenas, or otherwise limit the scope of discovery "for good cause" to prevent "annoyance, embarrassment, oppression, or undue burden or expense[.]" FED. R. CIV. P. 26(c)(1). The party resisting discovery bears the burden of showing good cause, "which contemplates a particular and

specific demonstration of fact as distinguished from stereotyped and conclusory statements[.]" *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 549 (5th Cir. 2016).

Relevant here, when "a party's physical or mental condition is at issue, that party shall provide to the opposing counsel either the party's medical records or a signed authorization so that records of health care providers which are relevant to injuries and damages claimed may be obtained." Local Rule CV-34; *see also Barnett v. Stafford Transp. of La.*, No. 1:20-CV-280, 2020 WL 10314640, at *3 (E.D. Tex. Sept. 10, 2020) ("When a plaintiff places his medical condition at issue, a defendant may discover medical information related to that condition.") (quotations omitted). Seeking damages for emotional distress is sufficient to put a party's mental condition at issue. *See, e.g., Barnett*, 2020 WL 10314640, at *3 (allowing discovery of ten years of medical records because plaintiff sought damages for "mental anguish, physical pain and suffering, disability, loss of enjoyment of life, and physical impairment"); *Stogner v. Sturdivant*, No. 10-125, 2011 WL 4435254, at *5 (M.D. La. Sept. 22, 2011) (similar). And this makes sense: If a plaintiff alleges harm from an emotional injury, the defendant should be able to evaluate its potential defenses, such as determining "whether the plaintiff suffered any pre-existing physical or emotional distress that may be the (or an) actual cause of his/her emotional distress." *Stogner*, 2011 WL 4435254, at *5.

## III. DISCUSSION

Orr argues Tyson is not entitled to the redacted portions of the Medical Records because the concealed information involves traumatic events that occurred "more than thirty years ago," during Orr's childhood. In Orr's view, her childhood trauma has nothing to do with her current, employment-related claims asserted against Tyson. (Dkt. #57 at 2). Tyson counters that, having put her mental health at issue, "Orr cannot selectively redact the portions of her mental health records that may reveal alternative causes of those very conditions while simultaneously seeking substantial damages—including punitive damages—for the same alleged injuries." (Dkt. #58 at 2). The Court agrees with Tyson. The redacted portions of the Medical Records show that, while the referenced traumatic events occurred years ago when Orr was a child, she may have suffered long-term effects on her mental health that bear on her claim for non-economic damages.

### A. Childhood Trauma Redactions

#### i. Orr's assertion of privilege

Because Orr's claim for non-economic damages squarely puts her mental health at issue, she cannot invoke the psychotherapist-patient privilege or related privacy concerns to conceal medical records that are relevant to mental-health complaints underpinning her request for substantial non-economic damages.[2]

[2] The Court notes that Orr's privilege log identifies "privacy" as the applicable privilege for all redactions. (Dkt. #84-4). Likewise, in Orr's response to Tyson's request for her authorization to release mental health records she asserts a "privacy" privilege. (Dkt. #84-3). The Court assumes that Orr's assertion of privilege is based on the psychotherapist-patient relationship, which encompasses a patient's privacy interests. *See Busselman v. Battelle Mem. Inst.*, 4:18-CV-5109, 2019 WL 7763824, at *2 (E.D. Wash.

Courts have historically taken three approaches to determine whether a litigant has waived psychotherapist-patient privilege over their medical records: (1) the broad approach; (2) the middle-ground approach; and (3) the narrow approach. *See, e.g., Merrill v. Waffle House*, 227 F.R.D. 467, 474–76 (N.D. Tex. 2005) (collecting cases); *Black v. Pan Am. Laby's, LLC*, No. 1:07-CV-924, 2008 WL 11333775, at *2–*3 (W.D. Tex. July 8, 2008) (same). The first two approaches—the broad and middle-ground approaches—compare plaintiff's requested relief to what some courts have described as "garden-variety" emotional-distress damages. *Black*, 2008 WL 11333775, at *2–*3. "This legal fiction appears to refer to a plaintiff's request for damages related to emotional pain, suffering, inconvenience, and loss of enjoyment of life" *E.E.O.C. v. Eastbox LLC*, No. 4:23-CV-814-SDJ, 2025 WL 41915, at *3 (E.D. Tex. Jan. 7, 2025) (cleaned up).

Under the broad approach, if a plaintiff requests damages for emotional distress, their mental condition is at issue and psychotherapist-patient privilege is waived. *Merrill*, 227 F.R.D. at 474. Under the middle-ground approach, "courts have permitted discovery only when the plaintiff has done more than allege 'garden variety' emotional distress." *Black*, 2008 WL 11333775, at *3. Finally, under the narrow approach, "the privilege is waived only when the plaintiff introduces privileged communications in evidence either directly or by calling the particular psychotherapist as a witness." *Merrill*, 227 F.R.D. at 474 (quotations omitted).

June 18, 2019) ("A litigant's right to privacy is already accounted for in the operation of the psychotherapist-patient privilege.").

The Court is unaware of any Fifth Circuit precedent addressing this issue. However, Fifth Circuit authority on evidentiary standards for proving emotional injury or mental anguish is instructive. The Fifth Circuit has made clear that an "award for emotional injury greater than nominal damages must be supported by evidence of the character and severity of the injury to plaintiff's emotional well-being." *Salinas v. O'Neil*, 286 F.3d 827, 830 (5th Cir. 2002); *see also Carey v. Piphus*, 435 U.S. 247, 264 n.20, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (stating that "an award of damages must be supported by competent evidence"); *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 719 (5th Cir. 1998) (noting the importance of detailed, non-conclusional statements). So, what are "nominal damages"? They are a "trifling sum awarded when a legal injury is suffered but there is no substantial loss or injury to be compensated." *Grisham v. City of Fort Worth*, 837 F.3d 564, 570 (5th Cir. 2016) (quoting BLACK'S LAW DICTIONARY (10th ed. 2014)) (emphasis added). In sum, under Fifth Circuit precedent, when a plaintiff seeks more than "a trifling sum" because of an alleged legal injury, she must support such a claim with "evidence of the character and severity of the injury to plaintiff's emotional well-being." *Salinas*, 286 F.3d at 830.

Consistent with this precedent, the Fifth Circuit's Pattern Jury Instruction for emotional-distress damages provides as follows:

> To recover compensatory damages for mental and emotional distress, [Plaintiff] must prove that [he/she] has ***suffered a specific discernable injury with credible evidence***. Hurt feelings, anger, and frustration are part of life and are not the types of harm that could support a mental-anguish award. Evidence of mental anguish need not be corroborated by doctors, psychologists, or other witnesses, but

> [Plaintiff] must support [his/her] claims with ***competent evidence of the nature, extent, and duration of the harm. Damages for mental or emotional distress must be based on the evidence at trial.*** They may not be based on speculation or sympathy.

Fifth Circuit Pattern Jury Instructions (Civil Cases) § 10.13 (2020) (emphases added). Nothing about this burden is generalized or "garden variety," whatever that means.[3] Rather, a plaintiff's burden is specific, individualized, and unique. Given this burden, defendants must be able to explore, through discovery, information relevant to their defenses, which may include medical records. These principles apply here, where Orr asserts in her sworn interrogatory that she "began experiencing symptoms of humiliation, mental anguish and stress, depression, headaches, lethargy, and anxiety, all arising from Tyson's racially discriminatory and retaliatory conduct, when she was pretextually terminated on June 24, 2024." (Dkt. #64-1 at 12).

---

[3] The term "garden variety," as a descriptor for emotional injury or mental anguish, is curious and unhelpful. It appears to have no grounding in medical or psychological terminology. So, what is its legal significance, if any? That is unclear, at least to this Court. If a "garden variety" emotional injury connotes essentially no injury, then it has no legal relevance. Likewise, if "garden variety" is intended to reference a circumstance in which "a legal injury is suffered but there is no substantial loss or injury to be compensated," *Grisham*, 837 F.3d at 570, it still fails to reference a compensable damage and remains unhelpful. Similarly, if a "garden variety" emotional injury references "[h]urt feelings, anger, and frustration," it remains irrelevant in this circuit because such feelings "are part of life and are not the types of harm that could support a mental-anguish award." Fifth Circuit Pattern Jury Instructions (Civil Cases) § 10.13 (2020).

On the other hand, if "garden variety" is meant to reference an injury that would support the recovery of "compensatory damages for mental and emotional distress," then Fifth Circuit precedent requires that the plaintiff demonstrate she "suffered a specific discernable injury with credible evidence," and such a plaintiff must also "support [her] claims with competent evidence of the nature, extent, and duration of the harm." *Id.* In this context, use of the term "garden variety," as applied to a plaintiff's specific, discernable emotional injuries or mental anguish is, at best, unnecessary, and at worst, counter-intuitive and confusing.

According to Orr, she has "a formal diagnosis and receives medical treatment for these issues, and has produced medical records of this treatment." (Dkt. #64-1 at 12).

Against this backdrop, the waiver standard associated with the broad approach conforms to Fifth Circuit precedent and the circumstances of this lawsuit. Under the applicable broad approach, because Orr has made claims for "economic and non-economic damages (humiliation, mental anguish and stress, depression, headaches, lethargy, and anxiety)," (Dkt. #31 ¶ 644), and she does not seek merely "a trifling sum" for such damages, her medical conditions are at issue and she has waived any psychotherapist-patient privilege over her medical records. (Dkt. #31 ¶ 1143) ("Plaintiffs seek recovery, compensatory, and equitable (i.e., back pay and front pay), and punitive damages, as well as attorney's fees…"). Finally, Orr's waiver of the psychotherapist-patient privilege encompasses any related privacy interest. *See Busselman*, 2019 WL 7763824, at *2 ("A litigant's right to privacy is already accounted for in the operation of the psychotherapist-patient privilege."); *Eastbox LLC*, 2025 WL 41915, at *5.

**ii. Orr's request for a protective order**

Under Rule 26(c), when a party moves for entry of a protective order she must show good cause and she bears the burden to prove "the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (per curiam) (first quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978); and then citing 8 Charles Alan Wright, Arthur R. Miller &

Richard L. Marcus, *Federal Practice and Procedure* § 2035, at 483–86 (2d ed. 1994)). If a party maintains that a protective order is necessary to protect it from undue burden or expense, it "must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 590 (N.D. Tex. 2017) (first citing *Merrill*, 227 F.R.D. at 477; and then citing *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006)). "The Court has broad discretion in determining whether to grant a motion for a protective order." *Id.* at 593 (citing *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985)).

For several reasons, Orr has failed to demonstrate good cause for the Court to enter a protective order preventing disclosure of the redacted portions of the Medical Records related to childhood trauma.

*First*, because Orr's mental health has been placed in issue through her claim for non-economic damages, any medical records relevant to Orr's mental health are discoverable. Orr has admitted as much. (Dkt. #57 at 2) ("Ms. Orr has put her emotional distress at issue and does not dispute that therapy records related to the events giving rise to this lawsuit are discoverable."). Nonetheless, Orr resists disclosure of mental health information connected with her childhood trauma. In Orr's view, such information is "irrelevant" because it "concern[s] traumatic events that occurred in Ms. Orr's childhood, more than thirty years ago" and "do[es] not involve any person who worked at Tyson, do[es] not involve anyone Ms. Orr. [a]lleges discriminated or retaliated against her, and did not take place at any Tyson facility."

(Dkt. #57 at 4). Orr goes on to argue that the redacted information "[does] not make it more or less probable that Tyson engaged in the discriminatory and retaliatory conduct alleged in this case." (Dkt. #57 at 4).

This argument fails. Orr conflates discovery concerning alleged acts of discrimination or retaliation with discovery on causation related to Orr's alleged mental-health conditions. When a plaintiff claims that they have suffered an injury impacting their physical or mental health because of a defendant's actions, it is axiomatic that the defendant is entitled to discovery concerning the question whether its conduct caused the alleged injury. As relevant here, the discovery request for Orr's mental health information is not directed to the question whether acts of discrimination or retaliation against Orr occurred at Tyson, but rather the question whether any such alleged conduct, as opposed to some other cause, resulted in Orr's alleged mental health conditions.

In this regard, the context of Tyson's discovery requests and the content of the redacted material underscore why the evidence Orr attempts to conceal is relevant and discoverable. Orr declared in a sworn interrogatory that she "began experiencing symptoms of humiliation, mental anguish and stress, depression, headaches, lethargy, and anxiety, all arising from Tyson's racially discriminatory and retaliatory conduct, when she was pretextually terminated on June 24, 2024." (Dkt. #64-1 at 12). As a result, Orr has made claims for non-economic damages related to "humiliation, mental anguish and stress, depression, headaches, lethargy, and anxiety." (Dkt. #31 ¶ 644). Whether or not Orr was experiencing mental health struggles

because of her traumatic childhood during the period surrounding the facts alleged in the complaint is relevant to Tyson's defense against those non-economic damages. *See* FED. R. CIV. P. 26(b)(1); *Stogner*, 2011 WL 4435254, at *5. The Court's review of the Medical Records confirms that the information requested by Tyson is relevant and discoverable. For example, the Medical Records show that during a therapist appointment in late March 2023—more than a year prior to Orr's termination, (Dkt. #64-1 at 12)—she reported moderate anxiety and severe depression. (Dkt. #63 at 100–101 (sealed)). As to this same appointment, Orr has redacted some of the visit notes and case assessment notes which discuss her past family history. (Dkt. #63 at 104, 106 (sealed)). Because Orr alleges that she began to experience "anxiety" and "depression" only after her termination by Tyson in 2024, these records are relevant to Tyson's defense regarding causation as to Orr's non-economic damages. *See* Local Rule CV-26(d)(3)–(5) (observing factors to consider when determining if something is related to a claim or defense include information that is likely to influence or affect the outcome of a defense, information that deserves to be considered in the preparation, evaluation, or trial of a defense).

*Second*, Orr's argument that the redacted information should not be disclosed to Tyson because Orr has already produced "ample material in the unredacted therapy notes for Defendant to evaluate Ms. Orr's emotional distress claims and to develop any legitimate defense," (Dkt. #57 at 7), is without merit. The Federal Rules of Civil Procedure do not permit Orr to limit her discovery responses to the amount of material or information she has unilaterally deemed "sufficient" for the requesting

party's needs. *See Franklin D. Azar & Assocs., P.C. v. Bryant*, No. 4:17-CV-00418, 2018 WL 11443607, at *2 (E.D. Tex. Sept. 17, 2018) ("[A] party may not chose to produce 'selective' or 'representative' documents in responding to a properly tailored request under the Federal Rules of Civil Procedure Rule 26; rather, it must produce all such relevant documents."); *cf. Heller v. City of Dallas*, 303 F.R.D. 466, 489 (N.D. Tex. 2014) ("Similarly, a party cannot refuse to produce a requested document or information simply because it is relevant to a claim or defense on which the producing party believes that it will prevail."). This is contrary to the broad scope of discovery authorized in the Federal Rules of Civil Procedure. FED. R. CIV. P. 26(b)(1); *see Brown v. Waco Fire & Cas. Co.*, 73 F.R.D. 297, 299 (S.D. Miss. 1976) ("Discovery processes here when properly exercised will enable a litigant to know just as much about his case as does his adversary before trial.").

*Third*, Orr cannot credibly argue that Tyson's relevant discovery requests are overbroad or unduly burdensome, or that such requests are disproportionate to the needs of the case. At issue are 109 pages of Medical Records that Orr has already produced. Orr has redacted only the allegedly sensitive portions related to her childhood trauma. Other portions of the Medical Records related to her upbringing or issues involving her current family and personal life have not been redacted. *See* (Dkt. #63 at 104 (sealed)). There is no issue that the breadth of Tyson's requests is overreaching.

Likewise, the period covered by Tyson's request does not present a concern. Orr does not contest the request's temporal scope, rather she contends that, because

her childhood trauma occurred more than thirty-years ago, any references to such trauma are outside the scope of discovery and irrelevant. (Dkt. #57 at 5). In support of this contention, Orr notes that Tyson previously objected to one of Orr's discovery requests, arguing that its ten-year temporal scope was overbroad. According to Orr, Tyson now seeks to impose a double standard on temporal scope by "seek[ing] disclosure of information that occurred more than thirty years ago." (Dkt. #57 at 5).

Orr is mistaken. Tyson's request for disclosure of the redacted information in the Medical Records does not concern thirty-year-old documents, it challenges Orr's redaction of portions of documents created between 2023 and 2025. *See generally* (Dkt. #63 (sealed)). *See Barnett*, 2020 WL 10314640, at *3 (permitting discovery of past ten years of medical records). Because Orr alleges non-economic damages premised on mental health issues associated with her termination in 2024, information in the Medical Records concerning her mental health during this period, i.e., from 2023 through 2025, is relevant and discoverable. The fact that such records may involve events that occurred during Orr's childhood does not alter the analysis. Orr may have suffered long-term effects on her mental health because of her childhood trauma.[4] Tyson is entitled to the requested discovery on this issue.

[4] There is ample learned commentary that traumatic events occurring during childhood may have long-term effects on an individual's mental health. Such commentary explains that, although youth generally are resilient after trauma exposure, many develop potentially long-lasting mental health problems. *See* Judith A. Cohen et. al., *Practice Parameter for the Assessment and Treatment of Children and Adolescents With Posttraumatic Stress Disorder*, 49 J. Am. Acad. Child Adolescent Psychiatry 414, 414 (2010). Likewise, commentators have opined that, when trauma occurs early in life, critical aspects of brain and personality development may be disrupted. *See* Julian D. Ford et al., *Trauma Among Youth in the Juvenile Justice System: Critical Issues and New Directions*, Nat'l Ctr. for Mental Health & Juv. Just. 1 (2007). "Child traumatic stress occurs when children and

* * * *

Orr has waived the psychotherapist-patient privilege and any related privacy interest concerning her mental health records that involve childhood trauma. Orr has also failed to carry her burden to show good cause for a protective order preventing Tyson from requesting unredacted versions of such records. Orr must produce versions of the Medical Records without any of the childhood trauma redactions.

Orr has voiced reasonable concerns about the disclosure of sensitive and private information in this case, but a protective order has been entered to secure such information. (Dkt. #37). The protective order allows the parties to secure sensitive material produced in discovery from inappropriate disclosure or dissemination. The protective order also encompasses any privacy concerns related to third parties. *See Schutte v. Megalomedia, Inc.*, No. A-14-CV-890 LY, 2016 WL 3546427, at *2 (W.D. Tex. June 23, 2016) ("To the extent the documents contain third parties' personal information . . . the protective order in the case . . . will protect such information.").

**B. Orr's selective redactions of "family history"**

Although Tyson does not object to the redactions of Orr's Family History, after its in camera review of these redactions, the Court notes that they, too, are likely

adolescents are exposed to traumatic events or situations and this exposure overwhelms their ability to cope with what they have experienced." *Id.* Some commentators maintain that youth exposed to traumatic events exhibit a wide range of symptoms, which can have both immediate and long-term effects, "as traumatic experiences in childhood lead to a greater risk of psychiatric, cardiac, metabolic, immunological, and gastrointestinal illness later in life." Ruth Gerson & Nancy Rappaport, *Traumatic Stress and Posttraumatic Stress Disorder in Youth: Recent Research Findings on Clinical Impact, Assessment, and Treatment*, 52 J. Adolescent Health 137, 137 (2013).

subject to disclosure because the redactions are intertwined with information on Orr's childhood trauma.

Orr has selectively redacted only some portions of her family history from the intake questionnaires, but not all. For example, she does not redact information about her father's asthma and allergies or her mother's hypertension, but she does redact more sensitive family medical history pertaining to her mother and father that the Court finds has a direct bearing on her childhood trauma.

As discussed herein, Tyson is entitled to discover such information. Indeed, it is impossible to separate out within the current redactions from the Medical Records what Orr is attempting to prevent from disclosure due to her childhood trauma and what she is attempting to prevent being disclosed in order to protect some aspect of family medical history or the privacy of third parties. Orr's privilege log makes no distinction and cites the same description for every redaction. (Dkt. #84-4). The childhood trauma redactions in the patient narratives discuss the very things she attempts to redact in the family history portions as well. For example, in the case assessment notes from the March 29, 2023, therapy session, the two redacted portions relating to her childhood trauma, which the Court is ordering must be unredacted, discuss the same issues detailed in the family history portions of the questionnaire. (Dkt. #63 at 107 (sealed)). Under the circumstances, ordering Orr to produce unredacted portions of the Medical Records that deal with her childhood trauma, but allowing her to maintain redactions of the same subject matter identified as "family history," makes little sense. That said, Tyson, unaware of the specific content of the

redactions, has limited its current request to the redactions concerning "childhood trauma." The Court therefore limits its order to such redactions, but suggests the parties confer on this issue and the propriety of further disclosures of redacted information in the Medical Records consistent with the Court's analysis and holdings in this Order.

## IV. CONCLUSION

It is therefore **ORDERED** that Plaintiff Orr's Motion for Protective Order, (Dkt. #57), is **DENIED**.

It is further **ORDERED** that Defendant Tyson's Motion to Compel, (Dkt. #58), is **GRANTED**.

It is further **ORDERED** that Plaintiff Orr is to produce the documents contained in the bates range ORR-000001–ORR-000109 without any redactions for childhood trauma by no later than **Tuesday, November 24, 2026**.

It is further **ORDERED** that, within fourteen days of this Order, Tyson may file an application for an award of its reasonable expenses and attorney's fees incurred in making its motion to compel, as required by Federal Rule of Civil Procedure 37(a)(5)(A). Orr's response shall be due fourteen days from the date on which the application is filed. Tyson's reply, if any, shall be due seven days from the date on which Orr's response is filed.

**So ORDERED and SIGNED this 13th day of November, 2026.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE